**Mark LANDSBERG, Plaintiff-Appellee,**

v.

**SCRABBLE CROSSWORD GAME PLAYERS, INC., Selchow & Richter Company, and Crown Publishers, Inc., Defendants-Appellants.**

**No. 85–6094.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 1986.

Decided Oct. 21, 1986.

Steven Kipperman, San Francisco, Cal., for plaintiff-appellee.

Walter D. Ames, Washington, D.C., for defendants-appellants.

Before GOODWIN, TANG and FLETCHER, Circuit Judges.

GOODWIN, Circuit Judge.

In this second appeal, defendants challenge a summary judgment for plaintiff following our remand in *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 489 (9th Cir.1984) (*Landsberg I*). We affirm the judgment as modified.

Plaintiff Mark Landsberg wrote a book on strategy for winning at the Scrabble board game. He contacted defendant Selchow & Righter Co. (S & R), the owner of the Scrabble trademark, to request permission to use the mark. In response, S & R

requested a copy of the manuscript, which Landsberg provided. After prolonged negotiations between them regarding the possible publication by S & R of the manuscript were broken off, S & R brought out its own Scrabble strategy book. Landsberg sued S & R, its subsidiary Scrabble Crossword Game Players, Inc., Crown Publishers, Inc., the publishers of S & R's book, and several individual defendants in state court for copyright infringement and breach of contract. Defendants successfully removed under 28 U.S.C. § 1441(a) (1982). After a bench trial, the district court found that: S & R's book was based upon Landsberg's manuscript; the two works were substantially similar; defendant S & R had copied both the ideas and the form of expression of Landsberg's work; and that defendants had infringed Landsberg's rights. *Landsberg I* reversed the judgment for Landsberg on his copyright infringement claim because the S & R book lacked the degree of similarity required for infringement of a nonfiction work. *Landsberg I*, 736 F.2d at 489. We remanded for further proceedings on whether "circumstances and conduct manifesting the terms and existence of a contract precede[d] or attend[ed] disclosure of the idea." *Id.* Upon remand, the district court held a status conference and the parties submitted additional briefs. The court then made supplemental findings of fact and conclusions of law and entered judgment for plaintiff on his contract claim. Defendants now appeal from this judgment. We affirm.

### I. The district court's finding that defendants had breached an implied-in-fact contract with Landsberg

■ Defendants' principal argument on appeal is that the idea which is the subject of the alleged implied-in-fact contract is that of a book about Scrabble strategy, and that the idea was disclosed in Landsberg's first letter to S & R. This argument treats the trial testimony regarding the distinction between ideas and their expression, which was central to the copyright claim, as determinative of the subject of the im-

plied contract. The contract claim turns not upon the existence of a protectible property interest, however, but upon the implied promise to pay the reasonable value of the material disclosed. *See Donahue v. Ziv Television Programs, Inc.*, 245 Cal. App.2d 593, 601, 54 Cal.Rptr. 130, 140 (1966). At issue is thus whether an implied contact was made, and whether defendants' use of the manuscript violated its terms. Landsberg's proprietary interest in the form of expression is irrelevant.

California law allows for recovery for the breach of an implied-in-fact contract when the recipient of a valuable idea accepts the information knowing that compensation is expected, and subsequently uses the idea without paying for it. *Densy v. Wilder*, 46 Cal.2d 715, 733, 299 P.2d 257, 267 (1956). If disclosure occurs before it is known that compensation is a condition of its use, however, no contract will be implied. *Id.* at 739, 299 P.2d 270. Thus, if Landsberg unconditionally disclosed his manuscript before informing S & R that he expected compensation for its use, his contract claim fails under California law.

The district court found in *Landsberg I* that defendants had copied Landsberg's manuscript. We remanded for the limited purpose of determining whether Landsberg disclosed his manuscript before an implied contract had been formed. The district court's supplemental factual findings address this point. The issue before us is solely whether the findings are clearly erroneous.

In its supplemental findings, the district court found that Landsberg's initial disclosure of his manuscript was confidential and for the limited purpose of obtaining approval for the use of the Scrabble mark, and that given his expressed intention to exploit his manuscript commercially, defendants' use of any portion of it was conditioned on payment. It found, further, that the negotiations for the use of the manuscript by defendants show that Landsberg's belief that they would not use his manuscript without paying him for it was reasonable.

■ Defendants cite nothing in the record to suggest that these findings are incorrect. Instead, they rely upon their theory that the idea was simply that of a Scrabble strategy book, and that plaintiff blurted out that idea. This argument does not establish that the trial court was wrong. Landsberg disclosed the contents of his manuscript for a limited purpose that was made known to defendants. Defendants negotiated with him only long enough to produce a book based on his work without compensating him for his efforts. The district court's supplemental findings were not clearly erroneous.

## II. Landsberg's failure to file a cross-appeal on his contract claim in the earlier appeal

Defendants argue that Landsberg waived his right to pursue his contract claim by not filing a cross-appeal on the issue in the earlier appeal. The argument has no merit. Landsberg's complaint alleged both copyright infringement and breach of contract. Defendants argue that the district court's judgment in Landsberg's favor rested upon his copyright claim, and that by not reaching the contract claim the district court rejected it. Landsberg responds by arguing both that he did not abandon his contract claim, and that the judgment rested upon both claims.

■ Although some of the original findings are relevant to the contract claim, reading the findings of fact and conclusions of law as a whole shows that the district court's judgment rested solely upon the copyright claim. Landsberg's failure to file a cross-appeal does not, however, constitute a waiver of the contract claim. The theories were argued in the alternative. Landsberg received an amount equal to defendants' profit from the use of his manuscript in damages for defendants' infringing use. Having obtained this relief, he could hardly have been expected to assert his alternative contract theory on appeal. To do so would have been to seek double recovery. Further, Landsberg correctly argues that this court's remand for further findings on the contract claim establishes as the law of the case that the claim was neither abandoned nor waived. Defendants' waiver argument must be disregarded.

## III. The amount of the damage award

In *Landsberg I*, the district court awarded to Landsberg the profits realized by S & R and Crown Publishers through December 31, 1978, from the sale of S & R's book, attorney's fees, and costs. It also awarded $100,000 in punitive damages against S & R. The total liability after the initial judgment was roughly $440,300. On remand, the court added post–1978 profits from the sale of the S & R work, additional fees and costs, prejudgment interest at ten percent from the date of the initial judgment, and an additional $100,000 in punitive damages. The total liability after remand was just over $1 million.

Defendants argue that the court improperly calculated Landsberg's damage because:

(1) Defendants' profits were an improper measure of plaintiff's compensatory contract damages under California law;

(2) The initial grant of punitive damages was improper under Cal.Civ.Code § 3294, and the additional grant improperly penalized them for successfully appealing the initial judgment;

(3) The additional attorney's fees award for Landsberg's defense against defendants' successful appeal of the first judgment and for the proceedings upon remand was improper, as was the award at present billing rates for past services; and

(4) The award of prejudgment interest on the entire amount, including the punitive damages, was improper under Cal.Civ.Code § 3287.

### (1) *The Use of Defendants' Profits to Measure Plaintiff's Contract Damages*

■ The district court apparently relied upon the same damage theory in both the

initial proceedings and upon remand. Although as a consequence the court failed to take into account California's statutory limits on contract damages, we conclude that the district court nonetheless awarded an amount allowable under California law.

Contract damages under California law are designed to provide "as nearly as possible the equivalent of the benefits of performance." 1 B.E. Witkin, *Summary of California Law* Contracts § 637 (8th ed. 1973). Cal.Civ.Code § 3358 thus provides that "[e]xcept as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides."

If the implied contract between Landsberg and S & R provided merely for the payment of the reasonable value by S & R for the use of Landsberg's manuscript, then the grant of the total profits of S & R and Crown Publishers would exceed the amount Landsberg would have received in the absence of breach. He would be entitled only to the market value of S & R's use of the manuscript. Landsberg argues that the contract was not for the use of his manuscript, but for S & R's refraining from using it without his permission. He argues in effect that the contract requires both compensation and permission to use his manuscript. The district court's findings are consistent with this understanding of the contract terms. The court found that "based upon S & R's conduct, Plaintiff reasonably believed that S & R would not use or copy his manuscript, or any portion thereof, without his consent and without payment to him of an acceptable sum." Landsberg was therefore entitled under the terms of the implied contract to more than the fair value of S & R's use. He was entitled to deny S & R permission to use it at all, and to exploit his work through another means. Because S & R's breach resulted in Landsberg's losing the opportunity to market his work as he saw fit, the profits from S & R's exploitation of it are both the best measure of his losses due to the breach, and are consistent with § 3358's limitation. To read the contract as requiring anything less than both compensation and permission would be to sanction a forced exchange.

Defendants also argue that the district court improperly included the profits of defendant Crown Publishers in the compensatory damage award. Because Crown was dismissed from the case upon remand, S & R and the individual defendants are now solely liable for the Crown profits.

■ Defendants correctly claim that Crown was not a party to the implied contract, and therefore it incurred no liability from the breach. This does not, however, relieve the remaining defendants from liability for the Crown profits. Their breach deprived Landsberg of the profits realized by Crown. That Crown rather than S & R reaped part of the benefit of S & R's breach does not reduce Landsberg's recovery. Defendants point out that the massive marketing power of Crown Books and the relationship between S & R and Crown combined to produce sales far in excess of those that reasonably could have been made by Landsberg on his own or through other selling agencies. This assertion may well be true as an abstract marketing theory, but it does not follow that Landsberg's damages are limited to some expert's opinion of the sales that might have been predicted had Landsberg acted alone. The district court therefore properly included the Crown profits in the damage award.

■ Lastly, defendants, relying upon Cal. Civil Code § 3300, argue that the compensatory damage award was contrary to California's statutory limits on contract damages. Section 3300 merely codifies the rule of *Hadley v. Baxendale*, (1854) 9 Ex. 341, 156 Eng.Rep.R. 145, which confines damages to those naturally arising from a breach, or which might have been reasonably foreseen as the result of a breach. Witkin, *supra*, at § 639. Because there is no foreseeability problem in this case, § 3300 is complied with.

**(2) *The Punitive Damage Awards***

 California allows punitive damages only for "the breach of an obligation not arising from contract." Cal.Civ.Code § 3294. Punitive damages may be awarded, however, if a breach of contract is also a tort. *See* Witkin, *supra*, at § 644. In *Seaman's Direct Buying Service, Inc. v. Standard Oil Co. of California*, 36 Cal.3d 752, 686 P.2d 1158, 206 Cal.Rptr. 354 (1984), ("*Seaman's*") the California Supreme Court held that "a party to a contract may incur tort remedies when, in addition to breaching the contract, it seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists." *Id.* at 769, 686 P.2d at 1167, 206 Cal.Rptr. at 363. Defendants argue that to apply the *Seaman's* doctrine to an implied-in-fact contract case would extend state law unduly. We reject this argument because under California law an implied-in-fact contract is, like an express one, a "true" contract. Both are based upon the intention of the parties to contract. *See* Witkin, *supra*, at § 3. *See also Donahue*, 245 Cal.App.2d at 604–05, 54 Cal.Rptr. at 137. Had recovery in this case been based on quasi-contract, the contract would have been judicially created, and defendants' argument might have had force. That the contract was implied-in-fact, however, provides no principled basis for distinguishing *Seaman's*.

 Finding that S & R had denied the existence of the contract in bad faith and without probable cause, the district court relied upon *Seaman's* to impose punitive damages on S & R. This factual finding was not clearly erroneous. Indeed defendants have offered no evidence to suggest that they acted in good faith. We therefore affirm the initial $100,000 punitive damage award. -

 Defendants argue that the district court erred in doubling the punitive damage award upon remand because the only intervening event was their successful appeal of the copyright infringement claim. We agree. Although the defendants were found liable for breach of contract upon remand, we conclude that the district court imposed a chilling impediment to the right to appeal by increasing its initial punitive damage award merely because defendants' successfully appealed the first judgment against them. The interest and attorney fees added to the award an amount sufficient to compensate Landsberg for the delay and inconvenience caused by this marathon litigation. There was no finding that the appeal was taken in bad faith. The second award of punitive damages must be vacated.

**(3) *The Attorney's Fees Award***

Defendants argue that the district court improperly awarded additional attorney's fees to Landsberg upon remand because the additional fees were incurred in defending against defendants' successful appeal of the initial judgment and for the proceedings upon remand. Landsberg convincingly shows that fees were neither sought nor awarded for work done by his attorneys on the first appeal. His lawyers submitted affidavits stating the time spent on the case after entry of the initial judgment, the portion of that time spent on the first appeal and that spent on the further district court proceedings. Landsberg claimed and the district court granted only the latter portion. Thus, we address only the propriety of the fees for work upon remand.

 We remanded the case so that the district court could make further findings on the contract claim. Because Landsberg prevailed and the district court found that the defendants acted in bad faith, we conclude that the court did not abuse its discretion in awarding fees for the work upon remand. In fact, we envisioned such an award in *Landsberg I. See* 736 F.2d at 491.

Defendants also challenge the award of fees for all the work since the commencement of the first district court proceedings at Landsberg's lawyers' 1985 rates. In the initial proceedings, defendants were charged for the time up to that point at rates substantially below those charged in

1985. The hours allowed in the initial judgment were simply carried over to the second judgment and billed at the higher rates.

 Landsberg argues that charging defendants at current rates for work done in the past is accepted practice. Because the result of this practice in this case would be to penalize defendants for their earlier successful appeal, we reject this argument and reduce the fee award to the sum awarded by the district court in the initial proceedings, plus the amount awarded for the work upon remand at the higher 1985 rates.

(4) *The Prejudgment Interest Award*

The district court awarded plaintiff prejudgment interest at a rate of ten percent from November 8, 1979, the date of the initial judgment, on the total of the compensatory and punitive damages, attorney's fees, and costs. We must also modify this award.

State law governs the award of interest in diversity cases. *Michael-Regan Co., Inc. v. Lindell*, 527 F.2d 653, 659 (9th Cir.1975). Under California law, if a favorable judgment is reversed on appeal, interest runs not from the date of the initial judgment, but from that of any subsequent one. *Stockton Theatres, Inc. v. Palermo*, 55 Cal.2d 439, 442, 360 P.2d 76, 78, 11 Cal.Rptr. 580, 582 (1961). The only exception applies when a reversal is in substance only a modification, in which case interest runs from the date of the initial judgment. *Id.; Espinoza v. Rossini*, 257 Cal.App.2d 567, 65 Cal.Rptr. 110 (1967). Here, we vacated the initial award because Landsberg had not made the requisite showing of copyright infringement. This was more than a modification of the judgment. The district court thus erred in granting interest running from the date of the initial judgment. We therefore modify the award, granting interest only from the date of judgment upon remand.

We reject defendants' argument that Cal.Civ.Code § 3287(a) precludes the charging of prejudgment interest on the fees, costs, and punitive damages because they were not calculable prior to the entry of judgment. Section 3287(a) allows for prejudgment interest on liquidated claims. Defendants infer from this that amounts incalculable at the time of the breach may not be subject to prejudgment interest. This misunderstands § 3287(a), which applies to claims as of the time they become calculable. Thus, an unliquidated claim that becomes liquidated in the course of litigation is subject to § 3287(a). *See* Witkin, *supra,* at § 654. Thus, section 3287(a) does not preclude the grant of prejudgment interest.

Judgment on liability affirmed; award of damages, attorney fees and interest modified.